## STATE v. GROVER, CHADWICK AND FLEISCHNER.

REFEREE'S FINDINGS—EFFECT OF.—Where a suit in equity has been referred to a referee to find the facts, and his findings have been filed and no objection made thereto in the court below, by motion to set aside or otherwise, the supreme court, on appeal from the decree entered thereon, will consider no fact not embraced in such findings nor admitted by the pleadings, nor pass an opinion on any question of law not affecting the correctness of the decree as based upon such findings and admissions.

APPEAL from Marion County.

*A. C. Gibbs and W. G. Piper*, for appellant.

*J. N. Dolph*, for respondent, Fleischner.

This was a suit for an accounting for moneys alleged to have been received by the respondents, as the board of commissioners for the sale of school, university and other lands belonging to the state, during the period from September

14, 1870, to September 14, 1874. After the cause was at issue, it was referred to Hon. M. P. Deady, Judge of the U. S. district court for the district of Oregon, to report his findings of fact upon the evidence, and his conclusions of law therefrom. A trial was had before such referee and his report returned as follows:

### THE FINDINGS OF FACT.

"The referee having heard the allegations and proofs of the parties and the argument of counsel, now finds and states the following conclusions of fact therein:

"I.  That between September 14, 1870, and September 14, 1874, the defendants were the duly qualified and acting governor, secretary, and treasurer of state, respectively, and as such, they constituted and were a board of commissioners for the sale of the school and university lands of Oregon and for the investment of the funds arising therefrom, as provided in § 5 of article VII. of the constitution of the state, with such powers and duties as might be prescribed by law.

"II.  That during said period the said defendants by virtue of sundry legislative acts of the state were also authorized and required, as such board, to select some and sell all of the several lands theretofore granted by congress to the state, as follows:  (1) The swamp and overflowed lands granted by the act of March 12, 1860, (12 Stat. 3); (2) the 500 thousand acres granted by the act of September 4, 1841, (5 Stat. 455), for the purpose of internal improvement, but by the constitution of the state (§ 2 Art. VII.), with the consent of congress (see joint res. Feb. 9, 1871, 16 Stat. 595), diverted to the support of common schools; (3) The lands granted by the act of February 14, 1859, (11 Stat. 383) for the use of schools in lieu of such portions of §§ 16 and 36 in each township as had been prior thereto, sold or

otherwise disposed of; (4) The 72 sections granted by the act last aforesaid for the use and support of a state university; (5) The 10 sections granted by the same act for the erection of public buildings at the seat of government; (6) The 90 thousand acres granted by the act of July 2, 1862, (12 Stat. 503), for the support of an agricultural college; and (7) The tide lands which inured to the state upon its admission into the Union, on February 14, 1859.

"III.   That said defendants, as said board, and during said period, sold portions of said lands and received and disposed of the proceeds thereof, as follows:"

(Then follows a statement of the amounts received from the several sources specified, in detail, and the amounts accounted for by the respondents.   The aggregate amount received being $218,738 02, and the amount accounted for, $212,584 15 which includes $21,487 73 expended and paid out by the respondents, in the selection and disposal of said lands, leaving a deficiency in their account of $6,153 87.) The report proceeds:

"IV.   That the following credits in the accounts of the defendants, as sums paid out from the proceeds of the sales of swamp lands, are erroneous or illegal and therefore dis allowed:"

(Total amount $496 40.)

"V.   That the defendants Grover and Chadwick and A. H. Brown, constituted and were such board of commissioners from September 15, 1874, to February 1, 1877, and thereafter, and until September 10, 1878, said board was composed of said Chadwick and Brown only; that from September 14, 1870, until September 10, 1878, T. H. Cann was employed by said board as its clerk and custodian of its funds; that on October 10, 1878, said Cann paid to the board of commissioners for the sale of school and university

lands, the sum of $8,951 85, to be applied upon any deficiency that might be found in the accounts of said commissioners during their terms of office, commencing in September, 1870; that on June 10, 1880, and long after the commencement of this suit and of a similar one against the defendants Grover and Chadwick and said Brown, for alleged failure to pay over or account for moneys received by them as members of such board after September 14, 1874, said Cann requested the then board of commissioners to make the application of the payment made by him as aforesaid, but said board made no application of such payment and left the same to be applied as the law will direct.

"VI. That the balance of $6,153 87 aforesaid was, on and after September 14, 1874, a debt due the plaintiff from the defendants herein, upon which the right of suit then accrued, and at the date of said payment, was also the oldest debt due by said commissioners, or any of them, to the plaintiff for or on account of any moneys received for the sale of the lands aforesaid or any of them.

### THE FINDINGS OF LAW.

"And as conclusions of law from the premises the referee now finds and states as follows:

"I. That the defendants herein, as the board of commissioners aforesaid, were the lawful custodians of the moneys arising from the sale by them of the lands aforesaid or any of them except the capitol lands, and were also authorized and empowered to expend and pay out so much of the same as they in good faith, and with ordinary care, found and deemed necessary to the discharge of their duty to select and sell lands or any of them.

"II. That the right to commence this suit accrued on September 15, 1874, and within six years from the time it

was commenced, and therefore is not barred by lapse of time.

"III.   That the payment of $8,951 85 as aforesaid, must be first applied to satisfy and extinguish the debt of $6,153 87, due from the defendants herein, to the plaintiff, on September 14, 1874, which being done, the defendants are not in any wise indebted to the plaintiff, for or on account of the matters stated in the complaint herein, or any of them, and are therefore entitled to a decree that they go hence without day, and for their costs and expenses.

. "Matthew P. Deady, Referee."

Upon the filing of the report in the court below, the appellant moved to set aside the first and third conclusions of law, to affirm it in all other respects, and for a decree against the respondents for the sum of $6,153 87 and costs.   Respondent Fleischner moved for an affirmance of the whole report, and his motion was sustained, and a decree entered in accordance therewith, dismissing the suit with costs to respondents.   The state appealed.

By the Court, Watson, J.:

The appellant claims that the court below erred in refusing its motion to set aside the first and third conclusions of law, in the report of the referee, and in refusing to enter the decree asked for in its favor.   The first inquiry suggested by the record in the case is, whether the appellant occupies such a position before this court as entitles it to raise these questions or any of them.   Upon mature consideration, we are satisfied that it does not.   We conceive that the action of a party in the court below, upon the filing of a referee's report, is binding upon him there, as well as in this court.

The referee found that after allowing the respondents all the proper items of expense incurred in the selection and sale of the lands mentioned in the report, there was still a

deficiency of $6,153 87 in their account. In the same motion in which the appellant asks to have the first and third conclusions of law set aside, it asks for a final decree for the amount of this deficiency. The amount of the expenses incurred, in selecting and selling the lands, allowed the respondents by the referee, as appears from his report, was $21,487 73, and was entirely separate and distinct from the amount of $6,153 87 found to be a subsisting deficiency, on September 14, 1874, and it is quite apparent that appellant only intended by its motion to ask for a decree for this deficiency so found due, and not for any portion of the amount allowed by the report to the respondents for expenses as above stated.

It does not matter that the appellant might have moved for a decree for the amount of the expenses so allowed, in addition to the amount of such deficiency, and it would not matter if its legal right to recover the aggregate sum of both, were clear and incontrovertible; it was under no compulsion to do so, and if instead, it chose to ask for a decree for only one of such amounts, or only a portion of one, it had the undoubted right to do it, and the court could not have granted more extensive relief. The only question is, what did the appellant intend? And we think there can be no doubt but that it meant to claim only the balance found by the report of the referee to have been due on September 14, 1874, and after all the credits for expenses had been allowed and deducted from the whole amount received by the respondents, and charged against them in the accounting.

If this position is correct, and we feel convinced that it is, then it follows as an inevitable consequence that the appellant must be confined, upon the appeal, to errors in the decree affecting this deficiency of $6,153 87. If the court below properly disposes of this balance, then the appellant

is precluded, by its own act, from urging error in respect to other matters which could not have resulted in injury to its substantial rights.   Now the rule of law, adopted by the referee, in his first conclusion, had no bearing upon the final disposition of this deficiency of which appellant complains. It merely covered the allowance of expenses incurred in selecting and selling the lands, while the amount due, on account of this deficiency, which the referee found, and the appellant asked a decree for, definite in amount, and being in excess of such allowance, was not affected by it.   If this conclusion had been set aside as incorrect, the final decree of the court would not have been different on that account.

It was irrevelent to the issue before the court, on the appellant's motion for the decree which he asked upon the findings of fact in the referee's report; and as the ruling of the court below upon it could not have influenced its final decree, and the question raised upon it is equally irrelevant here, we feel under no obligation to pass any opinion as to its correctness.   As to the objection based upon the refusal of the court below to set aside the third conclusion of law in the referee's report, the position of the appellant is equally unfortunate.   It nowhere appears in the report that there was any deficiency in the accounts of the commissioners arising out of transactions of the board, occurring subsequently to September 14, 1874.

The only facts we can consider in this case must be found in the pleadings, or else in the findings of the referee.   The effect of the appellant's motion on the report, was to affirm the findings of fact, for it moved to affirm, in every other respect except as to the first and third conclusions of law. By this course the appellant confined itself, so far as the facts not admitted by the pleadings were concerned, to the case made by such findings, and if the decree is supported by

those findings, it ought not to be disturbed, and cannot be.

As there is no fact in this whole record, showing or tending to show, any other deficiency to which the payment by Cann might have been applied, the court below committed no error in appropriating it to the only deficiency disclosed by the record before it. This proposition we deem too plain to need any further explanation. It is sufficient to say that in no view of the law upon this subject could the court below have made any different application of this payment than it did by the decree appealed from. We find no error, and shall therefore affirm the decree with costs.

Decree affirmed.